## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Case No.:_____

**Raymond Butler, Plaintiff,**

v.

**Caliber Inc., a Minnesota Corporation, d/b/a/ Caliber Products Inc.**

### COMPLAINT

Plaintiff Raymond Butler, by and through the law firm of Springer & Steinberg, P.C., brings this product liability action against Defendant Caliber Inc., a Minnesota Corporation, d/b/a/ Caliber Products Inc. ("Caliber") for design defect, manufacturing defect, negligent design, negligent manufacture, and failure to warn, which caused Plaintiff injuries, damages, and losses following a severe head injury received when a snow mobile loading ramp designed, manufactured, and branded by Caliber failed during its expected and intended use.

### I.  Introduction

1.      This matter arises from a head injury Mr. Butler received the evening of January 20, 2019.

2.      Plaintiff purchased the Ramp approximately four days prior to the incident after conducting research into the best available snowmobile loading ramps available to him in Steamboat Springs, Colorado.

3.      Despite securing and loading the ramp as instructed and as is common in the snowmobile industry, the ramp's components failed, causing the ramp to move upwards during the loading process, which in turn caused the ramp to rotate back towards Mr. Butler, colliding with his head and knocking him from his snowmobile to the ground.

4.      After receiving emergency care, Mr. Butler still suffers from sequela caused by the ramp's impact with the upper part of his forehead.

5.      The ramp ultimately failed because of design and manufacturing failures made by Caliber.

## II.      Jurisdiction and Venue

6.      Plaintiff is a Colorado resident.

7.      Defendant is a Minnesota resident.

8.      Defendant sells products in Colorado.

9.      Defendant, through itself or known agents, shipped the subject ramp to Colorado.

10.     Defendant had and has "authorized dealerships" in Colorado.

11.     Defendant, through an authorized dealer, sold the subject ramp in Steamboat Springs, Colorado.

12.     Defendant markets its products, including the Caliber RampPro, in Colorado.

13.     Defendant provides customer service to product users in Colorado.

14.     Defendant has sufficient contacts with Colorado to warrant this Court's exercise of personal jurisdiction over Caliber.

15.     The amount in controversy is greater than $75,000.

16.     This Court has original jurisdiction pursuant to 28 U.S.C. §1391(b).

17.     Venue for this action is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claim occurred in this District, namely the sale and failure of the Caliber RampPro occurred in Steamboat Springs, Colorado, and Plaintiff was injured in Steamboat Springs, Colorado.

## III.    Parties

18.     Plaintiff Raymond Butler resides at 545 County Road 917, Pagosa Springers, Colorado 81147.

19.     Defendant Caliber is a Minnesota corporation with both its principal place of business and registered agent located at 12600 W Frontage Road, Burnsville, Minnesota 55337.

### IV.     Facts

20.     Plaintiff purchased the Caliber RampPro ("the Ramp") that failed on January 20, 2019.

21.     Plaintiff purchased the Ramp after comparing different available models.

22.     Plaintiff chose the Ramp, in part, because of Caliber's marketing claims that the Ramp was the safest such product on the market.

23.     After purchasing the Ramp, Plaintiff took the Ramp to 425 Yahmonite Way in Steamboat Springs.

24.     He attached the Ramp to the back of his Ford F250 pickup truck.

25.     The truck was parked on a flat surface to enable proper loading of Plaintiff's snowmobile.

26.     The Ramp did not come with an instruction manual.

27.     The Ramp was packaged in plastic wrap and had a paper insert that gave basic visual instructions on proper usage.

28.     Caliber and various snowmobile enthusiasts also provided instructions for properly securing the Ramp on YouTube and other websites.

29.     Plaintiff attached the Ramp as directed by the paper insert.

//

//

30.     Plaintiff attached the Ramp in compliance with the directions given by

Caliber in marketing materials in online materials. *See*, *e.g.*:



31.     Plaintiff attached the Ramp in compliance with snowmobile enthusiast

videos also posted online.

32.     All of the foregoing instructions indicated the ramp was to be set against

the tailgate and "secured" to it by attaching one end of a self-ratcheting strap provided

by Defendant to an anchor point on the center of the Ramp, and the other end to the

vehicle's trailer hitch.

33.     Plaintiff placed the ramp against the tailgate of his pickup.

34.     Plaintiff attached Caliber's self-ratcheting strap to the ramp and pickup in

a horizontal position parallel to the ground.

35.     In placing the self-ratcheting strap, Plaintiff secured the Ramp side of the

strap to a bracket that was located in approximately the middle of the ramp.

36.     The self-ratcheting strap tightened.

37.     When the self-ratcheting strap initially tightened, the ramp pulled up and over the top of Plaintiff's tailgate.

38.     Plaintiff readjusted the ramp and allowed the strap to retighten with slightly less tension.

39.     This readjustment appeared to secure the Ramp to Plaintiff's truck.

40.     Plaintiff next walked to his snowmobile.

41.     Plaintiff mounted his snowmobile, standing up.

42.     Plaintiff drove his snowmobile slowly forward, remaining standing.

43.     As Plaintiff's snowmobile began driving up the Ramp as directed by Caliber's instructions, the Ramp "went up"—moving forward towards the truck and rotating.

44.     As a result of this movement, the Ramp quickly rotated backwards towards Plaintiff.

//

//

//

//

//

45.     A crossbeam on the Ramp made contact with Plaintiff's head, slashing his

head open and bending the crossbeam:



46.     Another portion of the Ramp contacted Plaintiff's mouth.

47.     Plaintiff was knocked off the snowmobile.

48.     Plaintiff landed on the ground.

49.     Plaintiff lost consciousness for at least 30 seconds.

50.     Plaintiff sustained a traumatic brain injury.

51.     After regaining consciousness, Plaintiff stumbled towards his friend's home, where his friend immediately drove Mr. Butler to the emergency room.

52.     The Ramp's movement was caused by design and manufacturing flaws.

53.     The Ramp's design was unreasonably dangerous in that it relied on the self-ratcheting strap to secure the Ramp in place prior to loading and to further hold the Ramp in place throughout loading.

54.     Caliber's placement of an anchor point for the ratchet strap in a location that was perpendicular to the vertical surface against the truck and parallel to the ground failed to safely secure the Ramp in place during the initial loading phase.

55.     Additionally, the Ramp was not manufactured as designed.

//

//

//

//

//

//

//

56.     Early product videos and photos from Caliber demonstrate that the Ramp was designed to have a storage bracket at the top of the Ramp and a sturdier pin in the approximate middle of the Ramp:



57.     However, the Ramp Plaintiff purchased, as well as others put into the stream of commerce, were manufactured with the mounting points reversed. *See*, *e.g.*:



58.     The reversal of these anchor points resulted in the middle point being weaker than designed or intended.

59.     The combination of these reversed anchor points and the placement of the self-ratcheting strap created an unreasonably dangerous product.

60.     Being in a horizontal position, the strap worked with the front of Plaintiff's snowmobile to cause the Ramp to push up towards his truck rather than to secure the Ramp in a stationary position.

61.     Moreover, as the Ramp moved toward the truck, the self-ratcheting strap contracted, causing acceleration of the ramp's movement towards the truck, ultimately resulting in the misplaced storage bracket failing, allowing the Ramp to complete its lever-like movement back towards Plaintiff's head.

62.     A safer design was feasible at the time Caliber designed the Ramp.

63.     A safer design was feasible at the time Caliber manufactured the Ramp.

64.     Proper design quality control protocols would have resulted in a safer design that would have avoided Plaintiff's injuries by relocating the central anchor point higher up on the Ramp, which would hold the Ramp in place during all phases of loading.

65.     Proper manufacturing quality control would have resulted in a safer Ramp that would have avoid Plaintiff's injuries by incorporating proper welds and components in the locations they were designed to be in.

66.     Caliber, apparently recognizing these errors, moved the RampPro from the market.

67.     Caliber replaced the RampPro with the RampPro 2, which incorporates a design change for the anchor point/pin utilized during loading. That design change is reflected in product pictures and instructions.

68.     The RampPro 2's design was feasible at the time the RampPro was originally designed and manufactured.

**V.     First Claim for Relief: Strict Product Liability**

69.     The preceding allegations are incorporated by this reference.

70.     Defendant designed the Caliber RampPro that failed on January 20, 2019.

71.     Defendant assembled, or caused to be assembled, the Caliber RampPro that failed on January 20, 2019.

72.     Defendant constructed, or caused to be constructed, the Caliber RampPro that failed on January 20, 2019.

73.     Defendant prepared, or caused to be prepared, the Caliber RampPro that failed on January 20, 2019.

74.     Defendant exercised significant control over all or a portion of the manufacturing process of the Caliber RampPro that failed on January 20, 2019.

75.     Defendant placed, or caused to be placed, its own private label on the Caliber RampPro that failed on January 20, 2019.

76.     Defendant was a manufacturer of the Caliber RampPro that failed on January 20, 2019.

77.     At all relevant times, Defendant was engaged in the business of selling ramps like and including the Caliber RampPro for resale, use, or consumption.

78.     Defendant sold the Caliber RampPro that failed on January 20, 2019.

79.     The Caliber RampPro that failed on January 20, 2019 was defective, and because of the defect, the Caliber RampPro that failed on January 20, 2019 was unreasonably dangerous to a person who might reasonably be expected to use, consume, or be affected by the Caliber RampPro that failed on January 20, 2019.

80.     The Caliber RampPro that failed on January 20, 2019 created a risk or harm to persons or property that would not ordinarily be expected.

81.     The Caliber RampPro that failed on January 20, 2019 contained a defect in design that created a risk of harm to persons or property that was not outweighed by the benefits to be achieved from such design.

82.     The Caliber RampPro that failed on January 20, 2019 was defective at the time Defendant sold it.

83.     The Caliber RampPro that failed on January 20, 2019 was defective at the time it left Defendant's control.

84.     The Caliber RampPro that failed on January 20, 2019 was expected to reach the user or consumer without substantial change in the condition in which it was sold.

85.     The Caliber RampPro that failed on January 20, 2019 did reach the user or consumer without substantial change in the condition in which it was sold.

86.     Plaintiff was a person who would reasonably be expected to use, consume, or be affected by the Caliber RampPro that failed on January 20, 2019.

87.     Plaintiff had injuries, damages, and losses.

88.     The defect in the Caliber RampPro that failed on January 20, 2019 was a cause of Plaintiff's injuries, damages, and losses.

## VI.   Second Claim for Relief: Manufacturing Defect

89.     The preceding allegations are incorporated by this reference.

90.     Defendant designed the Caliber RampPro that failed on January 20, 2019.

91.     Defendant assembled, or caused to be assembled, the Caliber RampPro that failed on January 20, 2019.

92.     Defendant constructed, or caused to be constructed, the Caliber RampPro that failed on January 20, 2019.

93.     Defendant prepared, or caused to be prepared, the Caliber RampPro that failed on January 20, 2019.

94.     Defendant manufactured, or caused to be manufactured, the Caliber RampPro that failed on January 20, 2019.

95.     Defendant exercised significant control over all or a portion of the manufacturing process of the Caliber RampPro that failed on January 20, 2019.

96.     Defendant placed, or caused to be placed, its own private label on the Caliber RampPro that failed on January 20, 2019.

97.     Defendant was a manufacturer of the Caliber RampPro that failed on January 20, 2019.

98.     During manufacture of the Caliber RampPro that failed on January 20, 2019 two anchor points and welds were reversed, with the weak anchor point and weld being placed midway along the Ramp, making it appear to be the correct connection point for a self-ratcheting strap to any normal user of the product.

99.     This weak weld and anchor point failed on January 20, 2019 because of the manufacturing error.

100.    At all relevant times, Defendant was engaged in the business of selling ramps like and including the Caliber RampPro for resale, use, or consumption.

101.    Defendant sold the Caliber RampPro that failed on January 20, 2019.

102.    The Caliber RampPro that failed on January 20, 2019 was defective, and because of the defect, the Caliber RampPro that failed on January 20, 2019 was unreasonably dangerous to a person who might reasonably be expected to use, consume, or be affected by the Caliber RampPro that failed on January 20, 2019.

103.    The Caliber RampPro that failed on January 20, 2019 created a risk or harm to persons or property that would not ordinarily be expected.

104.    The Caliber RampPro that failed on January 20, 2019 contained a defect in manufacture that created a risk of harm to persons or property that was not outweighed by the benefits to be achieved from such manufacture.

105.    The Caliber RampPro that failed on January 20, 2019 was defective at the time Defendant sold it.

106.    The Caliber RampPro that failed on January 20, 2019 was defective at the time it left Defendant's control.

107.    The Caliber RampPro that failed on January 20, 2019 was expected to reach the user or consumer without substantial change in the condition in which it was sold.

108.    The Caliber RampPro that failed on January 20, 2019 did reach the user or consumer without substantial change in the condition in which it was sold.

109.    Plaintiff was a person who would reasonably be expected to use, consume, or be affected by the Caliber RampPro that failed on January 20, 2019.

110.    Plaintiff had injuries, damages, and losses.

111.    The defect in the Caliber RampPro that failed on January 20, 2019 was a cause of Plaintiff's injuries, damages, and losses.

## VII.    Third Claim for Relief: Negligent Design

112.    The preceding allegations are incorporated by this reference.

113.    Defendant designed the Caliber RampPro that failed on January 20, 2019.

114.    Defendant was a manufacturer of the Caliber RampPro that failed on January 20, 2019.

115.    Defendant manufactured the Caliber RampPro that failed on January 20, 2019.

116.    Defendant owed Plaintiff and other consumers of the Caliber RampPro a duty to design the product in a manner that would not endanger users utilizing the product as instructed, directed, and/or anticipated.

117.    As described earlier in this Complaint, Defendant designed the Ramp in such a way as to permit the Ramp to move, rotate, and injure users of the Ramp during normal use.

118.    Defendant failed to exercise reasonable care to prevent the Ramp from creating an unreasonable risk of harm to the person or property of one who might reasonably be expected to use, consume, or be affected by the Ramp while it was being used in the manner Defendant might have reasonably expected.

119.    Plaintiff was one those persons Defendant should reasonably have expected to use, consume, or be affected by the Ramp.

120.    The injuries, losses, and damages incurred by Plaintiff were reasonably foreseeable to a reasonably diligent designer and manufacturer of outdoor recreational equipment ramps.

121.    Defendant's design represented a failure to design a product in the way that a reasonably careful person, designer of similar products, and/or a professional engineer would have designed the product under the same or similar circumstances to protect others from injury, loss, and damage.

122.    Plaintiff did not assume the risk of Defendant's negligent design.

123.     Plaintiff had injuries, damages, and losses that were caused by Defendant's negligence while the Ramp was being used in a manner Defendant should have reasonably expected.

124.     Defendant's negligent design of the Caliber RampPro that failed on January 20, 2019 was a cause of Plaintiff's injuries, damages, and losses.

**VIII.   Fourth Claim for Relief: Negligent Manufacture**

125.     The preceding allegations are incorporated by this reference.

126.     Defendant manufactured or caused an agent to manufacture the Caliber RampPro that Defendant designed.

127.     Defendant owed Plaintiff and other consumers of the Caliber RampPro a duty to ensure that the manufacturing process was free of defects and resulted in a product that was manufactured as designed.

128.     As described earlier in this Complaint, Defendant and/or its agent manufactured the Ramp inconsistent with the design by switching two anchor points and weld that caused the Ramp to be defective and dangerous during normal use.

129.     Defendant failed to exercise reasonable care to prevent the Ramp from creating an unreasonable risk of harm to the person or property of one who might reasonably be expected to use, consume, or be affected by the Ramp while it was being used in the manner Defendant might have reasonably expected.

130.    Plaintiff was one of those persons Defendant should reasonably have expected to use, consume, or be affected by the Ramp.

131.    The injuries, losses, and damages incurred by Plaintiff were reasonably foreseeable to a reasonably diligent designer and manufacturer of outdoor recreational equipment ramps.

132.    Defendant's manufacture and quality assurance procedures represented a failure to manufacture a product in the way that a reasonably careful person, designer of similar products, manufacturer, and/or a professional engineer would have utilized when manufacturing a product under the same or similar circumstances to protect others from injury, loss, and damage.

133.    Plaintiff did not assume the risk of Defendant's negligent manufacture or quality assurance.

134.    Plaintiff had injuries, damages, and losses that were caused by Defendant's negligence while the Ramp was being used in a manner Defendant should have reasonably expected.

135.    Defendant's negligent manufacture of the Caliber RampPro that failed on January 20, 2019 was a cause of Plaintiff's injuries, damages, and losses.

**IX.    Fifth Claim for Relief: Negligent Failure to Warn**

136.    The preceding allegations are incorporated by this reference.

137.    Defendant knew, or in the exercise of reasonable care should have known, that the use of the Ramp as designed may be harmful or injuries to a consumer or user.

138.    Defendant knew, or in the exercise of reasonable care should have known, that the risk of harm from use of the Ramp as designed was not obvious to a reasonable consumer or user.

139.    Defendant knew, or in the exercise of reasonable care should have known, that the use of the Ramp as manufactured may be harmful or injuries to a consumer or user.

140.    Defendant knew, or in the exercise of reasonable care should have known, that the risk of harm from use of the Ramp as manufactured was not obvious to a reasonable consumer or user.

141.    A reasonably careful designer would warn of the risk of harm under similar circumstances.

142.    A reasonably careful manufacturer would warn of the risk of harm under similar circumstances.

143.    Defendant owed Plaintiff a duty to use reasonable care to warn Plaintiff of the risk of harm or injury associated with use of the Ramp as designed.

144.    Defendant owed Plaintiff a duty to use reasonable care to warn Plaintiff of the risk of harm or injury associated with use of the Ramp as manufactured.

145.    Plaintiff had injuries, damages, and losses that were caused by

Defendant's negligence with respect to warning of the risk of harm or injury.

146.    Defendant's negligence with respect to warning of the risk of harm or

injury was a cause of Plaintiff's injuries, damages, and losses.

X.      **Sixth Claim for Relief: Breach of Express Warranty**

147.    The preceding allegations are incorporated by this reference.

148.    Defendant sold the Ramp.

149.    Defendant expressly warranted the Ramp to be the safest on the market.

150.    Defendant expressly warranted its design to be safe and free of defects.

151.    Defendant expressly warranted its manufacture to be proper and free of

defects.

152.    Defendant claims that it "knows how important a good warranty policy is.

With that mind [Defendant] pride[s] ourselfs [sic] on delivering fast, efficient, free

replacements for [Defendant's] failures. We admit that we make some mistakes, but

want to correct them and keep our customers happy for life."[1]

153.    Plaintiff is a person who was reasonably expected to use, consume, or be

affected by the Ramp.

---

[1] https://www.caliberproductsinc.com/Warranty.php

154.    As described earlier in this Complaint, the Ramp was not as warranted in design or manufacture.

155.    Plaintiff notified Defendant of the breach of warranty within a reasonable time after discovering it.

156.    Plaintiff had injuries, damages, and losses that were caused by Defendant's breach of express warranty.

157.    Defendant's breach of express warranty was a cause of Plaintiff's injuries, damages, and losses.

## XI.    Seventh Claim for Relief: Breach of the Implied Warranty of Merchantability

158.    The preceding allegations are incorporated by this reference.

159.    Defendant sold the Ramp.

160.    Plaintiff is a person who was reasonably expected to use, consume, or be affected by the Ramp.

161.    Defendant was a merchant with respect to the type of product involved (e.g., the RampPro).

162.    As described earlier in this Complaint, the Ramp was not of merchantable quality at the time of sale.

163.    The Ramp would not have passed without objection in the trade had it been properly inspected post design and manufacture.

164.    The Ramp was not of fair average quality within the description Defendant provided to consumers like Plaintiff.

165.    The Ramp was not fit for the ordinary purpose for which it was to be used.

166.    This breach of warranty caused Plaintiff injuries, damages, and losses.

167.    Within a reasonable time after Plaintiff discovered the breach of warranty, Plaintiff notified Defendant of such breach.

168.    Defendant's breach of the implied warranty of merchantability was a cause of Plaintiff's injuries, damages, and losses.

## XII.    Eighth Claim for Relief: Breach of the Implied Warranty of Fitness for a Particular Purpose

169.    The preceding allegations are incorporated by this reference.

170.    Defendant sold the Ramp.

171.    Defendant impliedly warranted the Ramp to be suitable and/or fit for the particular purpose of loading outdoor recreation equipment, including but not limited to snow mobiles, into the back of pickup trucks.

172.     Plaintiff, an individual who utilized snowmobiles and loaded them into his truck, is a person who was reasonably expected to use, consume, or be affected by the Ramp.

173.     The Ramp was not suitable or fit for the particular purpose for which it was warranted because of the design and manufacturing defects described above.

174.     This breach of warranty caused Plaintiff injuries, damages, and losses.

175.     Within a reasonable time after Plaintiff discovered the breach of warranty, Plaintiff notified Defendant of such breach.

176.     Defendant's breach of the implied warranty of fitness for a particular purpose was a cause of Plaintiff's injuries, damages, and losses.

**XIII.   Prayer for Relief**

177.     WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant for such actual damages, general damages, special damages, consequential damages, and incidental damages as proven at trial, pre-judgment interest from the date of injury, post-judgment interest as provided for by law, Plaintiff's reasonable attorneys' fees and costs, including, without limitation, expert witness fees, deposition costs, and all other costs incurred in connection with the prosecution of this action, and all other damages to be determined at trial, and for such other and further relief as the Court deems just and proper.

## XIV.   Jury Demand

178.    Plaintiff requests this matter be tried to a jury on all issues so triable.

Dated: January 19, 2021

SPRINGER & STEINBERG, P.C.

_s/ Keith R. Scranton_
Jeffrey A. Springer
Keith R. Scranton
SPRINGER & STEINBERG, P.C.
1600 Broadway Suite 1200
Denver, Colorado 80202
T: 303.861.2800
F: 303.832.7116
jspringer@springersteinberg.com
kscranton@springersteinberg.com